IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STEVEN L. BALISTRERI,

                     Plaintiff,                     OPINION AND ORDER

    v.

                                              15-cv-247-slc

KEN KAST, AMY MASTRICOLA,
and JEREMY BAILEY,

                     Defendants.

---

Pro se plaintiff Steven Balistreri has filed this civil rights lawsuit alleging that while he was an inmate at Fox Lake Correctional Institution, his Eighth Amendment rights were violated by Correctional Sergeant Jeremy Bailey, Correctional Officer Amy Mastricola, and Correctional Officer Ken Kast. Specifically, Balistreri alleges that he was exposed to unconstitutional conditions of confinement when Mastricola and Kast did not immediately remove him from his cell after the in-cell toilet overflowed. Balistreri also alleges that after he slipped on the wet cell floor, Bailey delayed in providing him with necessary medical treatment.[1]

The three defendants have filed a joint motion for summary judgment on both claims. Because the undisputed facts show that defendants did not violate plaintiff's constitutional rights, I am granting their motion for summary judgment.

---

[1] Balistreri had raised additional claims against Kast and Bailey, as well as five other defendants, but on September 16, 2016, I dismissed those claims and defendants without prejudice on procedural grounds. *See* September 16, 2016 Order, dkt. 47.

On October 21, 2013, plaintiff Steven Balistreri was an inmate at Fox Lake Correctional Institution (FLCI). Defendants were staff of FLCI that were on-duty at the time of the incident: defendant Jeremey Bailey was a correctional sergeant, and defendants Amy Mastricola and Ken Kast were correctional officers.

In his complaint, Balistreri alleges that the toilet in his cell malfunctioned and overflowed at approximately 12:00 p.m., resulting in the cell being flooded with urine and fecal matter. (Complaint (dkt. 1) ¶ 17.) Balistreri further alleges that he told Mastricola, and his roommate told Kast, about the situation, *Id.* ¶¶ 18, 21, although neither Kast nor Mastricola recall being notified. By 12:40 p.m., the problem had not yet been fixed, and Balistreri says he again told Kast of the situation in the cell. *Id.* ¶ 19. Kast does not recall being notified at this time, but he does note that he was aware that the maintenance department had been notified of the situation.

At 12:40 p.m., Bailey made an entry into the log book noting that Balistreri's cell was flooded and that maintenance had been notified. Bailey does not recall who told him that the cell was flooded. Bailey states that typically when a toilet overflows, a maintenance person is sent to clean out the trap, and the inmates in the affected cell are temporarily moved to another cell until the affected cell can be cleaned by an inmate janitor. However, in this instance,

---

[2] Balistreri failed to respond properly to defendants' proposed findings of fact. Except where otherwise noted, the defendants' facts are adopted consistent with Fed. R. Civ. P. 56(e)(2) and this court's standing summary judgment procedure. *See* May, 23 2016 Pretrial Conference Rept., dkt. 34, at 6, ¶ C ("Unless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed."). Because Balistreri's complaint was submitted under penalty of perjury, I have drawn facts from his complaint to clarify the timeline of events and to provide as much of Balistreri's version of events as possible.

defendants state there was an inmate harming himself on the unit at the time of the overflow

in Balistreri's cell. According to defendants, responding to the other inmate harming himself

took priority over moving Balistreri to a new cell.

Balistreri alleges in his complaint that after the toilet backed up, he slipped and fell

while moving about the cell. (Complaint, dkt. 1, at¶ 24).  From Balistreri's complaint, the

closest I can pinpoint the time of his fall is after 12:40 but before 1:57 p.m. *See id*. at ¶¶ 19 &

26.  Balistreri states that he twice informed Bailey that he had fallen and had hurt his elbow,

neck, back, and head. *Id.* ¶ 25. Bailey does not recall Balistreri telling him that he had fallen or

injured himself, but Bailey states that if Balistreri had told him that he had fallen, then Bailey

would have contacted the Health Services Unit (HSU) so that a nurse could visit Balistreri's

cell to evaluate him.  For the purposes of summary judgment, the court must accept Balistreri's

account as true.  These are Balistreri's verified allegations in his complaint:

> 24.  Balistreri, while moving in the cell slipped and fell into the fecal and urine water that covered the cell floor.
>
> 25.  On at least two occasions, Balistreri informed Bailey that he had fallen and hurt his elbow, neck, back and head.  Bailey stated that he had other things to tend to and would get to Balistreri later, if he even could.
>
> 26.  Shortly after speaking to Bailey, at about 1:57 p.m., Balistreri informed Schmidt and Butterboardt that he needed medical attention and what had occurred for him to need the attention.
>
> 27.  Balistreri was not seen by medical staff until after 2:30 p.m., at which time the severity of his injuries was noted, which were of a severe enough nature, he was sent to the local emergency room.

April 20, 2015 Complaint, dkt. 1, at 2-3.

With regard to Paragraph 26, Balistreri's medical records show that Nurse Schueler

actually saw Balistreri at 2:22 p.m., presumably after Officers Schmidt and Butterboardt (or

their colleagues) walked Balistreri to the HSU. Balistreri told Nurse Schueler that when he fell,

3

he hit his head on the bed and fell onto his right elbow, which was bruised, immobile, numb, tingling, pale, and cold. Nurse Schueler provided Balistreri with ice and a sling, and he was transported to the hospital at 3:20 p.m. At the hospital, the doctor took a CT scan of Balistreri's head and cervical spine, as well as X-rays of his lumbrosacral spine and right elbow. The doctor determined that Balistreri had a concussion, neck pain, and an elbow contusion. He prescribed the NSAID Naproxen (Aleve) for pain and instructed prison staff to recheck Balistreri the next day for increased pain or vomiting.

OPINION

To succeed on their motion for summary judgment, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party. *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). However, "when the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party cannot rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial." *King v. Frank*, 371 F. Supp. 2d 977, 983-84 (W.D. Wis. 2005). As discussed below, the record before this court does not reveal any disputed material facts, and under the operative law, the defendants are entitled to summary judgment on both the conditions of confinement and delayed treatment claims.

## I. Conditions of Confinement

The Eighth Amendment prohibits conditions of confinement that "deprive inmates of the minimal civilized measures of life's necessities," such as food, medical care, personal safety, and sanitation. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). While "[t]he Constitution 'does not mandate comfortable prisons' . . . neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An inmate's conditions of confinement are unconstitutional when the following conditions are met: (1) the deprivation is "objectively, sufficiently serious," such that the "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities," and (2) the prison official shows a "deliberate indifference to inmate health or safety." *Id.* at 834 (internal quotations omitted). The official must be "subjectively aware of the risk" to be considered "deliberately indifferent." *Id*. at 829.

Balistreri's claim fails at the first prong of this test because Balistreri has not demonstrated that the conditions of his cell presented a sufficiently serious risk of harm. "Slippery surfaces . . . in prisons, without more, cannot constitute a hazardous condition of confinement." *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014); *see also Watkins v. Lancor*, 558 Fed. Appx. 662, 665 (7th Cir. 2014) ("[A] wet kitchen floor poses little risk of serious harm to inmates, and thus allowing a wet floor to go unremedied would not violate the Eighth Amendment."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (holding that an inch or two of standing water in a shower is not a risk that violates the Eighth Amendment). By itself, the wet floor of Balistreri's cell, even if it was slippery, did not create a hazardous condition of confinement that violated the Eighth Amendment. Further, it seems that Balistreri could have

avoided the risk presented by the wet floor altogether by sitting on his bed until he was transferred to a new cell.

Balistreri has also not presented sufficient facts to show that the exposure to human waste due to the toilet water on the floor was enough to elevate the slippery floor to a more serious condition. Exposure to human waste has been repeatedly recognized as a condition that may violate the Eighth Amendment. *See, e.g., Despain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment"). However, a brief exposure to human waste, without more, does not rise to the level of a constitutional concern. When courts have found potential Eighth Amendment violations in other cases, the time of exposure greatly exceeded the two and a half hours of exposure to which Balistreri was subjected, and there were additional intermingled unsanitary conditions. *See, e.g., Wheeler v. Walker,* 303 Fed. App'x. 365, 367-68 (7th Cir. 2008) (for two weeks, inmate was held in cell with "heavy roach-infestation, filth, and human waste"); *Vinning-El v. Long,* 482 F.3d 923, 924 (7th Cir. 2007) (for six days, inmate was held in a cell where walls were smeared with blood and feces, floor was covered with water, and the sink and toilet did not work); *Johnson v. Pelker,* 891 F.2d 136, 139 (7th Cir. 1989) (for three days, inmate was held in a cell where walls were smeared with "human defecation," and the water was not turned on).

Moreover, Balistreri has not alleged facts demonstrating that the exposure to the toilet water on the floor presented such a great risk to his physical health or personal dignity to constitute a deprivation of the "minimal civilized measures of life's necessities." *Rhodes,* 452 U.S. at 347. Balistreri claims that he has "bad memories of laying helpless on the floor and the

distinct smell of urine and feces," (Pl.'s Opp., dkt. 63, at 6), but aside from these unpleasant memories, Balistreri does not claim that the exposure to raw sewage for two and a half hours negatively affected his health or well-being.

That's pretty much the end of it, but if it were to matter, Balistreri has not alleged sufficient facts to establish that defendants were deliberately indifferent to Balistreri's health or safety. In order for a prison officials to be "deliberately indifferent," they must have been subjectively aware of the serious risk for harm. Kast and Mastricola both state that they "do not believe that water on a cell floor creates an immediate danger of a high likelihood that an inmate will fall and seriously injure himself." If Balistreri assessed that risk differently, or if he simply was wanted to avoid contact with the raw sewage, then Balistreri could have sat on the sink or bed. (Def.'s Facts (dkt. 55) ¶ 15.)

Also part of the equation is the fact that at the time of the overflow, the officers unexpectedly were required to respond to an inmate self-harm incident. Correctional officers who are confronted with two simultaneous health threats to different inmates cannot be said to be deliberately indifferent to the inmate who had to wait a few hours to be moved out of a wet cell because the officers prioritized the inmate in greater danger.

Because I am granting summary judgment to defendants on the conditions of confinement claim, there is no need to determine whether they are entitled to qualified immunity.

## II. Delay Providing Treatment

Prisoners are entirely reliant on prison officials for all medical treatment, and as such, the government is required to provide treatment when it is needed. *Estelle v. Gamble*, 429 U.S.

97, 103 (1976). Deliberately withholding necessary medical care is a violation of the Eighth Amendment prohibition on cruel and unusual punishment because it can result in unnecessary pain, suffering, or even death. *Id*. at 103-04. Deprivation of medical treatment in violation of the Eighth Amendment requires (1) that the medical need is objectively, sufficiently serious and (2) that the officials acted in a deliberately indifferent manner to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When considering if a delay in medical treatment violated the Eighth Amendment, the inmate must present "verifying medical evidence in the record to establish the detrimental effect of delay in treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1995) (*quoting Beyerbach v. Sears*, F.3d 1324, 1326 (8th Cir. 1995)).

As a starting point, Balistreri's concussion constituted a serious medical need. "Any injury to the head unless obviously superficial should ordinarily be considered serious and merits attention until properly diagnosed as to severity." *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995). At the prison, Nurse Schueller had Balistreri taken to the hospital, where a doctor diagnosed the concussion. But this is clearer in hindsight than at the time. Balistreri's report of his statements to Officer Bailey, set forth above, does not show that Bailey had any reason to know, infer or suspect that Balistreri had been seriously injured by his fall: there was no bleeding or obvious fractures, and Balistreri does not claim that he reported dizziness, blurred vision, disorientation or severe pain that might have alerted Officer Bailey that Balistreri had suffered a concussion or broken a bone.

But let's assume that Balistreri report of hitting his head when he fell was enough to merit a prompt visit to the HSU. That's what Balistreri got, notwithstanding Bailey's refusal to assist him. We know this because Balistreri reports that "shortly after speaking to Bailey," he made the same complaint to Officers Schmidt and Butterboardt, who apparently got him in

front of Nurse Schueler to be examined within 25 minutes (1:57 to 2:22). Even if I add five to ten minutes a gap between the first and second time Balistreri entreated Bailey, we are talking about 30 or 35 minutes total, which includes travel time to and check-in time at the HSU. This simply does not objectively qualify as a delay in treatment. It is important to bear in mind that Bailey's refusal to help Balistreri—which Bailey denies—by itself is not an Eighth Amendment violation.

Even if I assume, *arguendo*, that the short time gap between when Bailey said "no" and the other officers said "yes" is actionable, Balistreri's claim still falls short. Balistreri has not shown that the time between when he fell and when he received treatment had a detrimental effect on his health. Without some medical evidence that demonstrates that a delay in treatment had a negative impact on his health, Balistreri cannot succeed in his claim that Bailey delayed his medical treatment in violation of the Eighth Amendment. *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, the plaintiff must offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm.") (citation omitted). After the doctor diagnosed a concussion and body bruises, treatment was limited to providing an over-the-counter pain reliever and directing the officers to monitor Balistreri for additional symptoms. That qualifies as objectively inconsequential. The fact that the hospital performed a number of expensive tests with sophisticated machines doesn't advance Balistreri's claims if those tests confirm that Balistreri did not suffer any significant injuries from his fall.

In sum, Balistreri was not subjected to a delay in medical treatment that would in any way implicate his Eighth Amendment rights. Bailey is entitled to summary judgment on this claim.

ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. 53) is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 20th day of July, 2017.

BY THE COURT:

/s/

Stephen L. Crocker
Magistrate Judge